IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-2391-KHR

CORY S. SCHERBARTH,

        Plaintiff,

v.

OFFICER WOODS, Aurora City Police Department
OFFICER VAN CLEAVE, Aurora City Police Department

        Defendants.

---

## ORDER

---

Magistrate Judge Kelly H. Rankin

    This case is before the court on the motions of Defendants William Woods and Erik Van Cleave ("Defendants") to quash Plaintiff Cory Scherbarth's subpoena to the City of Aurora (doc. 46) and to stay certain discovery pending a determination of qualified immunity (doc. 52).[1] In the latter motion, Defendants ask the court to "limit[] discovery in this matter to only those facts and issues that are necessary to determine whether Defendants are qualified immune from suit under the circumstances of this case." The motions are fully briefed. The court also has before it the parties' joint motion to amend the schedule. Doc. 55.

## BACKGROUND

    Plaintiff's operative pleading is the amended complaint he filed *pro se*. Doc. 18. Mr. Scherbarth alleges two claims against Officers Woods and Van Cleave. First, Plaintiff alleges the officers used excessive force in arresting him, violating his Fourth Amendment right to be

---

[1] While Magistrate Judge Craig B. Shaffer is unavailable, this case is reassigned to the undersigned magistrate judge.

free of unreasonable seizure and violating C.R.S. § 18-8-803. Am. Complaint at p. 8 of 17. Second, Plaintiff alleges the officers falsely arrested and imprisoned him without probable cause, violating his Fourth, Fifth and Fourteenth Amendment rights. *Id.* at pp. 9-10 of 17. Plaintiff seeks damages, punitive or exemplary damages, medical coverage, and attorneys' fees and costs. *Id.* at p. 12 of 17.

In his original complaint, Plaintiff also sued the officers in their official capacities, which the court construed as a *Monell*[2] claim against the City of Aurora for a policy or custom that caused the alleged violations of Plaintiff's constitutional rights. On initial review pursuant to 28 U.S.C. § 1915, Magistrate Judge Gordon P. Gallagher found the complaint lacked fact allegations of a policy or custom causing the alleged violations. Doc. 10 (Order of October 14, 2016) at p. 3. Judge Gallagher gave Plaintiff an opportunity to amend his complaint to add such allegations, and Plaintiff instead moved to stay *Monell* claims until he could investigate. Judge Lewis T. Babcock denied the motion and to the extent the Amended Complaint still sought to sue the officers in their official capacities, dismissed those claims. Doc. 20 (Order of Jan. 11, 2017) at p. 4. Mr. Scherbarth thus sues only the officers in their individual capacities.

## ANALYSIS

Defendants' two discovery motions in part overlap each other. Both motions take issue with Plaintiff's subpoena for documents from the non-party City of Aurora. Both motions also argue that most of the documents Plaintiff seeks would only be relevant to a *Monell* claim. The court addresses the motion regarding the subpoena first.

---

[2] So named for *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978).

I.  *Defendants' Motion to Quash or Modify Subpoena*

On a timely motion, the court must quash or modify a subpoena if it "requires the disclosure of privileged or other protected matter, if no exception or waiver applies … or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information." *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, No. 17-cv-00803-CMA-NYW, 2017 WL 4278494, at *4 (D. Colo. Sept. 27, 2017) (citing Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B)). Defendants argue virtually all documents requested in the subpoena are irrelevant, but they have standing to challenge it only as to privilege or privacy. *Windsor v. Martindale,* 175 F.R.D. 665, 668 (D. Colo. 1997); *Charles Schwab*, 2017 WL 4278494, at *4. Defendants do not assert a privilege and assert a privacy interest only in their personnel files and (if any exist)[3] internal affairs investigation files. Therefore, the court considers Defendants' arguments only as to the subpoena requests for their personnel or internal investigation files: Doc. 46-1, subpoena categories 1, 2, 14 and 15. Defendants argue the court should use an inherent power to hear their relevance arguments, but under *Windsor* and its progeny, this court declines to do so. Defendants' motion to quash is denied as to subpoena categories 3-13.[4]

It is undisputed that Defendants have some privacy expectation in their personnel and internal investigation files; the question is whether Plaintiff has a need for the information that would outweigh that interest. The U.S. Supreme Court recognizes public officers have a constitutional right of confidentiality – albeit not absolute – in private, personal information such

---

[3] Defendants are careful to not indicate whether any internal investigation files actually exist. The court will assume Defendants are not wasting resources on a motion about non-existent documents but instead are asserting even the question of whether they have been internally investigated is private.

[4] To the extent subpoena categories 9-13 also request documents in the Defendants' personnel files or internal investigation files, those categories are duplicative of categories 1, 2, 14 and 15.

3

as may be contained within a personnel or investigation file. *Whalen v. Roe*, 429 U.S. 589, 599 (1977) ("individual interest in avoiding disclosure of personal matters"); *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 457 (1977) ("public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity"). Defendants argue the court should determine whether that right of privacy outweighs Plaintiff's need for discovery pursuant to the balancing test that Colorado state courts established in *Martinelli v. District Court,* 612 P.2d 1083 (Colo. 1980).

> When the right to confidentiality is invoked to prevent disclosure of personal materials or information, a tri-partite balancing inquiry must be undertaken by the court, as follows:
> (1) does the party seeking to come within the protection of right to confidentiality have a legitimate expectation that the materials or information will not be disclosed? (2) is disclosure nonetheless required to serve a compelling state interest? (3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

*Martinelli,* 612 P.2d at 1091 (paragraph breaks omitted).

In 2011, the Colorado Supreme Court modified this test such that "the requesting party must prove either that disclosure is required to serve a compelling state interest *or* that there is a compelling need for the information," and either "the information is not available from other sources," or if "available from other sources, … that it is using the least intrusive means to obtain the information." *In re District Court*, 256 P.3d 687, 691-92 (Colo. 2011).

Plaintiff argues *Martinelli* and *In re District Court* may not apply here because discoverability for federal claims is governed by federal rules and law. Plaintiff cites *Everitt v. Brezzel*, 750 F. Supp. 1063 (D. Colo. 1990) and *Cisneros v. Town of Center*, No. 08-cv-02661-WYD-MEH, 2009 WL 2568534, at *3 (D. Colo. Aug. 18, 2009). In both cases, the plaintiff

4

alleged (as does Mr. Scherbarth) excessive force, and false arrest or false imprisonment. Both cases find Federal Rule of Civil Procedure 26 – not *Martinelli* – governs the discoverability of police personnel or internal investigation files.

Defendants do not address *Everitt* or *Cisneros*, but point to *Flanagan v. Munger,* 890 F.2d 1557, 1570 (10th Cir. 1989) and *Denver Policemen's Protective Association v. Lichtenstein,* 660 F.2d 432, 434–35 (10th Cir. 1981). *Flanagan* and *Lichtenstein* applied *Martinelli* to assess claims that disclosures of police personnel or internal investigation files which occurred (or were ordered) outside of federal court violated the federal constitutional right of privacy. Defendants also cite a criminal case, *United States v. Neal,* No. 11-cr-00163-WJM, 2011 WL 3648381, at *4-5 (D. Colo. Aug. 18, 2011), in which this court applied *Martinelli* to determine the discoverability of police officer's personnel files. None of these cases analyze whether the issue of discoverability for a federal claim action should be decided under state or federal law.[5]

In the end, the court agrees with *Everitt* and *Cisneros'* reasoning that Rule 26 governs the discoverability of Defendants' personnel and internal investigation files. However, *In re District Court* and Rule 26 differ significantly only in the procedure to follow after a court finds officers' files should be produced. *Martinelli* requires *in camera* review in all such cases to ensure no irrelevant or highly personal information is disclosed. Rule 26 does not require *in camera* review, although the court has discretion to require it case-by-case. This court has found *in camera* review should be reserved to the rare or exceptional instance that the parties cannot

---

[5] The same is true in a peace officer's case under federal and Utah law, in which the Tenth Circuit applied *Martinelli's* balancing test (albeit citing only to *Lichtenstein's* articulation thereof). *Stidham v. Peace Officer Standards & Training,* 265 F.3d 1144, 1155 (10th Cir. 2001).

5

resolve a dispute on the issue. *See, e.g., Everitt*, 750 F. Supp. at 1067-68; *Cisneros,* 2009 WL 2568534, at *3-4.

But other than the question of *in camera* review, the court's analysis would be the same under either *In re District Court* or Rule 26. First, *Martinelli* does not purport to create a state law right of privacy; it addresses the federal constitutional right of privacy. *Martinelli,* 612 P.2d at 1091-92 (citing *Whalen*, 429 U.S. at 599; *Nixon,* 433 U.S. at 457, 458). *See also McDonald v. Wise,* 769 F.3d 1202, 1217 (10th Cir. 2014) (discussing *Martinelli* as a case regarding whether the "constitutional right of privacy prevents disclosure … during the discovery process," not a case establishing substantive scope for the right of privacy). The court is not aware of any Colorado law that creates a state law right of privacy in police personnel or internal investigation files more expansive than the federal right of privacy.[6] Defendants for instance cite the protection given to their files in the Colorado Open Records statute, C.R.S. § 24-72-204(3)(a) ("The custodian shall deny the right of inspection of [personnel files]… unless otherwise provided by law") and the Colorado Criminal Justice Records Act, C.R.S. § 24-72-305(5) ("unless otherwise provided by law, the custodian may deny access to" investigatory files). The statutes are consistent with the federal privacy interest, but do not add to it. Both statutes defer to other laws for the scope of privacy. Indeed, the Tenth Circuit rejected firefighters' assertions of a broader privacy right in their internal investigation files. *Mangels v. Pena*, 789 F.2d 836, 839-40, n.3 (10th Cir. 1986) ("Rights of substantive due process are founded not upon state

---

[6] *Neal* cites *People v. Spykstra*, 234 P.3d 662, 670 (Colo. 2010) as recognizing a privacy interest in police personnel files, but the case simply cites *Martinelli* regarding the balancing test for discoverability.

provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution.").

Second, the state and federal balancing tests are largely the same. *Martinelli's* balancing test was based in part on *Nixon*. *Martinelli*, 612 P.2d at 1091-92 (citing *Nixon*, 433 U.S. at 458). *In re District Court's* balancing of a compelling state interest or need for the information against the privacy interest is analogous to Rule 26's balancing of the need for information with the annoyance, embarrassment or oppression likely to result from disclosure. Fed. R. Civ. P. 26(b)(1) ("importance of the discovery in resolving the issues"); (b)(2)(C) (court must limit discovery that "can be obtained from some other source that is more convenient [or] less burdensome"); (c)(1) (authorizing protective orders regarding confidential information). *In re District Court's* limitation to the "least invasive" means is likewise analogous to Rule 26(c)'s provision for specifying the terms of disclosure for confidential information.

Turning to whether these files should be produced under Rule 26, Plaintiff argues he needs Defendants' personnel and internal investigation files because Defendants' credibility is a critical issue for his excessive force claim and the files may contain impeachment evidence. Plaintiff alleges he did not resist arrest or attempt to flee. Defendants assert to the contrary Plaintiff did resist or attempt to flee, necessitating their use of force. Plaintiff further argues that "it appears that Plaintiff and Defendants were the only witnesses to this event. Without the personnel files, Plaintiff may have no other way to impeach Defendants' credibility or challenge their versions of these events." Doc. 50 (response) at p. 11. Defendants reply that Plaintiff's brother witnessed the arrest. The parties thus disagree whether the files in question are the only potential source of impeachment.

Plaintiff argues the Tenth Circuit and Colorado courts find officers' privacy interests outweighed by a defendant's need for exculpatory evidence and the right to confront witnesses, relying on *Neal, Lichtenstein,* and *People v. Walker,* 666 P.2d 113, 121-22 (Colo. 1983). Defendants distinguish these cases as allowing discovery of officers' files only when the defendant is charged with assaulting an officer, there was no other source of evidence to impeach their credibility, or all of the prosecution's witnesses were police officers. *Walker,* 666 P.2d at 122; *Neal,* 2011 WL 3648381; *Lichtenstein,* 660 F.2d at 436 (holding "[i]nasmuch as the instant case involves a 'swearing match' between the accused and police officers, ascertainment of the truth is of particular importance."). These cases are persuasive that unless a claim involves a police officer's credibility (or the defendant's alleged conduct toward the officer during an arrest), the need for an officer's file is not compelling enough to overcome the officer's privacy interest. However, these cases do not purport to premise discoverability on the absence of other potential sources of impeachment evidence.

The court also finds *Everitt* and *Cisneros* persuasive on this issue. On excessive force and false arrest/imprisonment claims, neither case focuses on whether there are other potential sources of impeachment evidence. Both cases find officers' personnel files and internal investigation files relevant and order production; a *Monell* claim was central to that finding but does not appear to be the sole basis. *See, e.g., Everitt,* 750 F. Supp. at 1066 ("especially since plaintiff has made claims against both the individual officers and the municipality"); *Cisneros,* 2009 WL 2568534, at *2 ("especially in light of her claims against both the individual officers and the municipality itself."). Both courts restricted access to the parties' attorneys only, and allowed the officers to identify in a log any information within the files they deemed so

8

confidential or private that it warranted withholding even from the plaintiff's attorney. If the plaintiff wished to pursue that information, the court would then conduct an *in camera* review.

Unlike the above cases, however, with respect to internal investigation files Defendants also assert they received "Garrity advisements," in which the chief of police gave assurance that he or she would resist any request for disclosure of those files except as required by law. Specifically, Defendants assert

> the Aurora Police Department's *Garrity* Advisement provides that "[t]he information I provide shall remain confidential and no truthful information will be used in any criminal proceeding against me. Any request for this statement, whether criminal or civil, will be analyzed by the Chief of Police and the Department to resist any disclosure not mandated by law."

Doc. 46 (motion) at p. 12. Defendants argue this advisement as an alternative basis for their expectation of "limited confidentiality," citing *American Civil Liberties Union of Colorado v. Whitman*, 159 P.3d 707, 711 (Colo. App. 2006). The first difficulty with this argument is the Tenth Circuit found a similar advisement did not give officers a broader privacy interest than the federal Constitution does. *Mangels,* 789 F.2d at 839-40, n.3. Secondly, even assuming *Mangels'* holding is inapplicable here, the Chief and Department agree to resist only disclosures that are "not mandated by law." Defendants could not rely on the advisement as protection from a court finding a compelling need or state interest for discovery of the file. The court declines to find the "Garrity advisement" gives Defendants a greater privacy interest in internal investigation files than the federal Constitution provides.

The court finds that because Defendants' credibility is at issue in the excessive force claim, Plaintiff has shown sufficient need for potential impeachment evidence from Defendants' personnel and internal investigation files to outweigh Defendants' privacy interest. However, the

9

disclosure should be limited to the parties' attorneys only. The court therefore grants in part and denies in part Defendants' motion to quash as to subpoena categories 1, 2, 14 and 15 to limit the disclosure of Defendants' personnel and internal investigation files as follows.

The parties stipulated to a single-tier protective order governing confidentiality. It should not be too burdensome for counsel to modify it to a two-tier order. *See, e.g., Cisneros*, 2009 WL 2568534, at *3. Counsel should for instance be able to locate exemplars of such two-tier protective orders in other cases in this court. The parties shall promptly file a proposed, amended protective order to define a category of "Attorney's Eyes Only" materials to restrict disclosure of personnel files and internal investigation files (or any other categories of material the parties agree are highly confidential) to the parties' attorneys for use in this case. The proposed order shall apply to such documents produced by parties or by non-parties who agree to the order's terms. After the court has approved the amended protective order, Defendants[7] shall produce their personnel and internal investigation files as Attorneys' Eyes Only after their counsel reviews for information that Defendants believe in good faith is "so sensitive or confidential that it should be shown to nobody-not even plaintiff's counsel," redacting such information and providing a descriptive log of the redactions to Plaintiff's counsel. If the parties dispute the appropriateness of the redaction, they shall request a telephone discovery conference with the court, ahead of which Defendants shall submit the challenged materials for *in camera* review by email to Shaffer_chambers@cod.uscourts.gov.

---

[7] More precisely, the court orders Defendants to either permit the City as the subpoena recipient to produce those files, after Defendants review and redact in accordance with this order, or produce the files themselves in response to Plaintiff's request for production for the same files (doc. 53-2, request for production no. 7). Plaintiff does not need the same files from both Defendants and the City, and the court permits Defendants to determine with the City who shall produce the files.

Although the court allows the foregoing discovery of Defendants' personnel and internal investigation files, the court notes this information "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1). The court expresses no opinion whether information from these files will be admissible for any purpose.

II.     *Defendants' Motion to Stay or Limit Discovery*

A week after replying in support of their motion to quash, Defendants moved to stay or limit discovery. Doc. 52. They first request the court to limit discovery to only qualified immunity issues. As this court recently stated,

> "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." … Stated differently, the affirmative defense of qualified immunity "protects all but the plainly incompetent [government official] or those who knowingly violate the law."

*Estate of Goodwin v. Connell*, No. 17-cv-01124-PAB-MLC, 2017 WL 6561153, at *1 (D. Colo. Dec. 22, 2017) (citing *inter alia*, *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001)). The defense has two elements:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second ... the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the … inquiry … is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

Defendants argue they have raised qualified immunity by alleging it in their answer, and on that basis request the court to stay all discovery (including the subpoena to the City) that does not pertain to qualified immunity.[8] Defendants recognize they have not yet filed a dispositive motion raising qualified immunity for the court's resolution. In order to seek a stay based on the qualified immunity defense, Defendants must first raise the issue in a dispositive motion. *See, e.g., Rome v. Romero,* 225 F.R.D. 640, 644 (D. Colo. 2004) ("Arguably, these requests would be properly answerable by the individual Defendants, notwithstanding their recent motion raising qualified immunity, because the requests were propounded prior to that issue being raised."). The government official who does not raise qualified immunity in a motion to dismiss "cannot be said to be unduly burdened if he foregoes an opportunity to address the issue prior to the commencement of discovery, and instead waits to assert it until some point later in the litigation." *Id.*

For the same reason, the court also finds a stay is not warranted under the five factors required for stays under *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). If there is no pending motion to resolve whether qualified immunity applies, the Plaintiff's interest in proceeding expeditiously and the convenience of the court outweigh the burden to Defendants. The court therefore denies without prejudice Defendants' motion to stay discovery based on their qualified immunity

---

[8] Because the second prong of qualified immunity is a legal question, fact issues for qualified immunity are limited to the conduct at issue in Plaintiff's claims, *i.e.,* what happened when Plaintiff was arrested and whether probable cause existed at the time. *See, e.g., Rome*, 225 F.R.D. at 644–45. Thus the court understands Defendants as requesting discovery be stayed except regarding such facts of Plaintiff's arrest.

defense. If Defendants file a dispositive motion raising qualified immunity, they may renew their motion to stay discovery pending its resolution.

In the same motion, Defendants also request more broadly that the court should preclude Plaintiff from conducting discovery regarding the police department's policies, standard practices, training and other uses of force as irrelevant to the claims against Defendants. Defendants argue such discovery would only be relevant if Plaintiff were suing the City under *Monell,* which he is not. Defendants point to the scope of several requests in the subpoena to the City, attach the written discovery requests Plaintiff issued to Defendants, and the potential for expansive future discovery regarding other uses of force by the Aurora Police Department.

As for limiting the scope of Plaintiff's subpoena to the City, this is the same relevance argument that Defendants raised in their motion to quash. Regardless of the title of the motion, Defendants lack standing to challenge the scope of the subpoena.

As to Plaintiff's written discovery requests to Defendants, Defendants appear to use these only as a general example of "copious discovery." Defendants do not seek a protective order against any particular requests. They have already answered those requests, albeit with objections to many of the requests for production. Doc. 53-2. On the discovery Defendants already provided, there is nothing to stay. Other than Defendants' privacy objection regarding their personnel and internal investigation files,[9] Defendants' objections to the requests for production are not briefed for the court's resolution. Accordingly, the court addresses only the

---

[9] As noted above, the court's ruling regarding subpoena categories 1, 2, 14 and 15 applies equally to Plaintiff's Rule 34 requests for documents in Defendants' personnel or internal investigation files.

13

scope of discovery going forward, but the following discussion should also guide the parties in conferring regarding any disputes on existing discovery.

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

To aid in determining the scope of relevance for discovery, the court notes the elements of Plaintiff's claims. Plaintiff's excessive force claim regards whether Defendants' use of force in arresting him was objectively reasonable under the "totality of the circumstances." *Graham v. Connor,* 490 U.S. 386, 396 (U.S. 1989). The totality of circumstances includes

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. * * * The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

*Id.* at 396 (internal quotation marks omitted). "[T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Plaintiff's false arrest or false imprisonment claim regards whether Defendants were legally justified in arresting and confining him. "In the Tenth Circuit, a constitutional claim for … false arrest … originates with the elements of the corresponding state law tort … and plaintiff must demonstrate, in addition to the elements of the state law tort, that his Fourth Amendment right to be free from unreasonable search and seizure has been violated." *Chambers v. Mosness,* No. 13-cv-00393-REB-MEH, 2015 WL 881689, at *4 (D. Colo. Feb. 27, 2015) (quoting *Trimble*

*v. Park Cty. Bd. of Comm'rs,* 2000 WL 1773239 at *3 (10th Cir. Dec. 4, 2000)).[10] Under Colorado law, "if legal justification exists for an arrest, there can be no false arrest or false imprisonment;" the existence of probable cause is such legal justification. *Rose v. City & Cty. of Denver,* 990 P.2d 1120, 1123 (Colo. App. 1999). Thus if there was probable cause to arrest Plaintiff, the false arrest/imprisonment claim fails.

"[A]n officer has probable cause to make an arrest if the facts and circumstances within the officer's knowledge or upon which the officer has reasonably trustworthy information indicate that a crime has been committed." *Id.* at 1122-23. *See also Cortez v. McCauley,* 478 F.3d at 1116 (same, "or is about to commit a crime," citing federal cases).

> In determining whether an officer has sufficient, reasonably trustworthy information to establish probable cause, the court looks to the "totality of the circumstances." ... Nevertheless, the Fourth Amendment is not offended by mere negligence or innocent mistake in the determination whether probable cause exists.

*Chambers,* 2015 WL 881689, at *4.

In opposing Defendants' motions, Plaintiff recognizes that certain categories of information are relevant only to discovering whether he can seek to add a *Monell* claim: all complaints, reports and investigations against Defendants, all documents relating to Defendants' use of force, and all complaints, reports and investigations regarding use of force in arrests by any member of the Aurora police department in the last 10 years. Doc. 50 at p. 14 (discussing the "remaining" categories in Plaintiff's subpoena to the City, *i.e.,* categories 9-13).

---

[10] Regardless that the pro se amended complaint refers to the Fourth, Fifth and Fourteenth Amendments for this claim, in his responses to the discovery motions, Plaintiff does not dispute that he brings the claim under the Fourth Amendment.

Plaintiff cannot issue discovery to determine whether he could add a claim. The court can order discovery relevant to the subject matter of the case, but since the 2000 amendments of Rule 26, "'fishing expeditions' for new claims are no longer permitted." *Energy Intelligence Grp., Inc. v. Wells Fargo Sec., LLC,* No. 11-cv-01961-REB-KMT, 2012 WL 370252, at *1 (D. Colo. Feb. 3, 2012). *See* Fed. R. Civ. P. 26, Advisory Committee Note to 2000 Amendments ("signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."). *See also XTO Energy, Inc. v. ATD, LLC,* No. Civ. 14-1021 JB/SCY, 2016 WL 1730171, at *14 (D.N.M. Apr. 1, 2016).

When he filed the *pro se* Amended Complaint, Plaintiff moved to stay *Monell* claims. Judge Lewis T. Babcock denied the motion. Doc. 20 (Order of Jan. 11, 2017) at p. 4. Judge Babcock noted "Plaintiff may request leave of court to amend his pleading at a later time if he discovers facts that will support a claim for relief based on municipal liability." *Id.* The court understands this sentence as recognizing that in the course of discovery *relevant to his claims against the individual officers* Plaintiff might find facts pertinent to whether he has a basis to bring a *Monell* claim. Judge Babcock did not thereby authorize Plaintiff to issue discovery whose sole purpose is to determine whether Plaintiff could seek to add a *Monell* claim.[11] Plaintiff must first have a *Monell* claim before he can conduct discovery that would be relevant only to that type of claim.

---

[11] In his response brief, Plaintiff argues that unless he is permitted discovery in this case regarding the police department's policies, practices and training, he has no way to determine whether he could state a *Monell* claim and asks the court to clarify whether he may seek to add such a claim without having obtained discovery. The court states herein its understanding of Judge Babcock's order but cannot advise Plaintiff how to investigate the facts or otherwise meet Rule 11's requirements before seeking to add a claim.

However, as to the police department's policies, procedures and training that Defendants received, Plaintiff argues this discovery is relevant to his claims against Defendants because

> [1] Whether Defendants acted outside the scope of an official policy, or whether they acted in contravention of their training (or whether they acted without having had any training at all), is directly relevant to whether their use of force was "objectively reasonable given the totality of the circumstances." [2] This information is also relevant to Defendants' credibility, which, as described above, will be a critical issue in this case.

Doc. 50 at pp. 13-14. Plaintiff does not cite cases in support of either theory of relevance.

Defendants argue the department's policies and training are not among the circumstances considered for an excessive force claim, which they describe as "(1) the severity of the crime at issue, (2) whether the plaintiff posed an immediate threat to the safety of the officers, and (3) whether the plaintiff actively resisted or attempted to flee," citing *Osei v. Brooks*, 2013 U.S. Dist. LEXIS 38540, *21, 2013 WL 1151619 (D. Colo. 2013) and *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, *Graham* identified those factors as a *non-exclusive* list of the circumstances courts must consider, noting that "[b]ecause the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application … its proper application requires careful attention to the facts and circumstances of each particular case." *Id.* Defendants also reiterate that reasonableness is determined from the perspective of a reasonable officer on the scene, not by hindsight, citing *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). But these cases do not address whether evidence of a police officer's training, or his department's policies and standard practices are relevant to whether force was excessive.

17

For this question, the Tenth Circuit treats policies and standard operating practices separately from training. For Section 1983 claims, department policies and standard practices are not relevant to whether an officer's use of force was objectively reasonable.

> In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." … That logic would seem to apply equally to damage suits under § 1983. This Court has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force.

*Tanberg v. Sholtis,* 401 F.3d 1151, 1162–63 (10th Cir. 2005) (quoting *Whren v. United States,* 517 U.S. 806, 815 (1996) and collecting Tenth Circuit cases).[12]

As to the potential relevance of department policies and standard practices for Defendants' credibility regarding the events at issue, the court has not located cases within the Tenth Circuit addressing this question. Other courts suggest policies and standard operating practices could be relevant to an officer's credibility regarding conduct during an arrest. *See, e.g., Goodwin v. City of Painesville,* 781 F.3d 314, 322–23 (6th Cir. 2015) (evidence that officer failed to activate video camera during arrest in violation of department policy was relevant to officer's credibility regarding use of force in the arrest). At this point, the court will permit future discovery regarding the police department's policies and standard operating procedures relating to use of force in arrests as relevant only to Defendants' credibility, so long as it is

---

[12] "Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties. Modern police departments are able—and often willing—to use administrative measures … to encourage a high standard of public service, in excess of the federal constitutional minima. If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards." *Tanberg,* 401 F.3d at 1164.

proportional to the case. The court expresses no opinion whether such policies or procedures will ultimately be admissible for any purpose.

Regarding the department's training of Defendants, the Tenth Circuit

> appears to have drawn a distinction between SOPs and training [materials]. … In the only published Tenth Circuit opinion analyzing whether training materials are admissible as evidence of reasonableness in a Fourth Amendment excessive force case, the Tenth Circuit held that the training materials were admissible, stating that "the reasonableness of an officer's actions must be assessed in light of the officer's training."

*United States v. Rodella,* No. CR 14-2783 JB, 2015 WL 711949, at *16–17 (D.N.M. Feb. 6, 2015), *aff'd,* 804 F.3d 1317, 1337–38 (10th Cir. 2015) (internal quotation marks omitted, quoting *inter alia Weigel v. Broad,* 544 F.3d 1143, 1155 (10th Cir. 2008)). *See also Davies v. City of Lakewood,* No. 14-cv-01285-RBJ, 2016 WL 615471, at *3 (D. Colo. Feb. 16, 2016) ("an officer's training is relevant to the reasonableness of his conduct, and admissible, but … failure to comply with training is not determinative of whether his conduct in a particular context was objectively unreasonable."). Discovery regarding the police department's training of Defendants that relates to the conduct alleged in Plaintiff's claims is thus relevant and so long as it is proportional to the case, the court will permit future discovery on this issue.

In sum, the court grants Defendants' motion to preclude discovery that is solely relevant to whether Plaintiff could bring a *Monell* claim, but denies (without prejudice) the motion to limit discovery to qualified immunity issues, and denies the request to preclude discovery regarding the police department's policies, standard procedures, and training of Defendants that relates to the conduct alleged in Plaintiff's claims against Defendants.

### III. Joint Motion to Amend Schedule

Finally, the parties jointly request an extension of the discovery cut-off and dispositive motion deadline because discovery necessarily halted in late October 2017 while the parties briefed Defendants' discovery motions and awaited the court's ruling. Doc. 55. The court finds good cause for the requested extension. The fact discovery cutoff is extended to **April 16, 2018**; dispositive motions are due by **May 16, 2018**.

## CONCLUSION

Consistent with the foregoing, the court GRANTS IN PART and DENIES IN PART Defendants' motion to quash or modify subpoena (doc. 46); GRANTS IN PART and DENIES IN PART Defendants' motion to stay or limit discovery (doc. 52); and GRANTS the joint motion for extension (doc. 55).

If any further disputes arise regarding discovery, the parties (or the City of Aurora as a subpoenaed non-party) shall promptly contact Judge Shaffer's chambers to schedule a telephone discovery conference with the undersigned.

DATED: February 13, 2018.

BY THE COURT:

s/ _____
United States Magistrate Judge