IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:16-cv-02391-SKC

CORY S. SCHERBARTH,

    Plaintiff,

v.

OFFICER WOODS, *Officer of the Aurora City Police Department*, and,
OFFICER VAN CLEAVE, *Officer of the Aurora City Police Department*,

    Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#81]**

---

This order addresses Defendants Officer Woods and Officer Van Cleave's ("Defendants" or "Officers") Motion for Summary Judgment [#81] ("Motion").[1] The Court reviewed the Motion, all related briefing, the entire record, and applicable law. No hearing is necessary. For the following reasons, the Motion is DENIED.

### A. BACKGROUND[2]

This matter arises out of Defendants' arrest of Plaintiff Cory S. Scherbarth on September 25, 2014. [*See generally* #18 (Amended Complaint).] The arrest followed a struggle between Plaintiff and Defendants in which Officer Woods took Plaintiff to the ground and both Officers struggled to force Plaintiff into position to apply handcuffs to his

---

[1] The Court uses "[#__ ]" to refer to entries in the CM/ECF Court filing system.
[2] Unless otherwise indicated, the facts set forth are either uncontroverted, or if controverted, are taken in the light most favorable to the nonmoving party. *See Hall v. United Parcel Serv.*, No. Civ. A. 992467–CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing *Adler v. Wal–Mart Stores, Inc.*,144 F.3d 664, 670 (10th Cir.1998)).

wrists. [*See generally id.*] Plaintiff avers that he sustained multiple injuries due to the altercation, including: nerve damage in his left thumb, a mild concussion, multiple contusions to his left eye and face, lacerations to his upper lip, and a loose front tooth. [#18 at p. 5.] He filed this matter asserting Fourth Amendment excessive force claims against both Defendants.[3]

The Parties generally do not dispute the facts preceding their altercation. On September 25, 2014 (the date of the incident), Plaintiff had multiple active protection orders in place preventing him from having direct or indirect contact with a juvenile female ("M.W.").[4] [#81 at p. 3; #84 at p. 1.] That day, M.W.'s mother contacted law enforcement to report her suspicion that Plaintiff was violating the protective orders by being with her daughter at his residence in the City of Aurora. [#81 at p. 3; #84 at p. 1.] Defendants were then dispatched to Plaintiff's residence to investigate the report. [#81 at p. 3; #84 at p. 1.]

Plaintiff was not at home when the Defendants arrived at his residence, but his brother was. [#81-2 at 29:1-10.] His brother allowed Defendants inside the residence. [*Id.* at 32:14-17.] While inside, Defendants saw Plaintiff and M.W. walking together toward the house. [*Id.* at 35:1-13.] The brother told Officer Woods that Plaintiff was "going to run" when they contacted him.[5] [#81 at p. 4; #81-1 at 29:4 and 32:21-23.] As a result, the

---

[3] Plaintiff also brought a False Imprisonment claim but later "abandoned" it. [*See* #84 at p.1 n.1.]
[4] During part of this litigation, Plaintiff was a prisoner in the custody of the Colorado Department of Corrections ("CDOC"). [*See* #1.] He is no longer in custody. [*See* #98 (mail returned undeliverable and noting that Plaintiff is "N.I.C." – not in custody).] The Court's search of the CDOC's online inmate locator confirmed he is not currently in CDOC custody.
[5] Plaintiff objects to this statement on hearsay grounds. [#84 at p. 2 (citing *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995)). However, this testimony is

2

Defendants split up; Officer Woods stayed inside the living room of the home to meet Plaintiff as he entered, and Officer Van Cleave exited the back of the house and circled around to the front to enter the house behind Plaintiff to prevent an attempt to flee. [*Id.* at 35:9-13.] Defendants did not know if Plaintiff possessed a weapon as he approached. [#81 at p. 6; #84 at p. 3.]

What happened next is either in dispute or indiscernible from the record. Therefore, the Court recounts these contested events in the light most favorable to Plaintiff as the nonmovant. *See Adler v. Wal–Mart Stores, Inc.*,144 F.3d 664, 670 (10th Cir.1998).

As Plaintiff walked inside, Officer Woods made contact and advised him that he was going to jail. [#81 at p. 5; #84 at p. 1.] Plaintiff used an expletive as he surrendered himself to Officer Woods for arrest.[6] [#81 at p. 5; #84 at p. 1.] He then stood with Officer Woods "directly inside the residence waiting to be handcuffed" with his back to Officer Woods and his right hand on his head. [*See* ## 81 at p. 5; 84 at p. 1; 84-1 at 85:21-86:3, 136:2-137:4.] While Officer Woods attempted to cuff Plaintiff's right hand, Plaintiff looked back over his right shoulder toward Officer Woods and said: "[a]re you trying to plant drugs on me?" [*Id.*; #81-1 at 85:3-17; #81-2 at 43:23-45:15.] Officer Woods then used a leg sweep that spun Plaintiff 180-degrees and landed him on his buttocks on the front porch. [#81 at p. 6; #84 at p. 1.]

---

admissible non-hearsay evidence due to its effect on the listener. *See Faulkner v. Super Value Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993).
[6] Defendants assert that Plaintiff told M.W., "this is your [expletive] fault." [#81 at p. 5.] Plaintiff disputes this fact and claims that he said, "[a]re you [expletive] serious [M.W]?" [#84 at p. 2.]

3

While on his back, Plaintiff raised his right hand by his face and scooted away from Officer Woods – actively avoiding what he believed may be additional uses of force by Officer Woods. [#81 at p. 6.; #84 at p. 1.] By this time, Officer Van Cleave came around the side of the house and saw Plaintiff still on his back with his knees up near his chest and his feet flat on the ground. [#81 at p. 6; #84 at p. 1.] Plaintiff yelled to Officer Van Cleave that he was "down," and he "allow[ed] Defendants to roll him over onto [his] stomach." [#84-1 at 91:20-21, 92:24.] Plaintiff recalls being handcuffed by Defendants immediately after being placed in the prone position. [*Id.* at 94:9-10, 113:21-24.] Then, Plaintiff felt a sharp pain in his hands as the Officers pulled both of his thumbs toward his wrists. [*Id.* at 95:2-25.] He began yelling to his family in the house to help him. [*Id.* at 112:11-21.] At that point, he claims Officer Woods slammed his head into the ground with his forearm and punched his face while Officer Van Cleave covered his mouth and nose with his hand and pushed his knee into his left shoulder. [*Id.* at 113:2-117:21.] Shortly thereafter, back-up and emergency medical personnel arrived and offered medical attention to Plaintiff. He declined and Officer Van Cleave took Plaintiff to the Aurora City Police department for booking. [*Id.* at 22:13-20.]

Plaintiff asserts that he never attempted to flee (indeed, fleeing would have been fruitless because he was wearing an ankle monitor at the time), and that Defendants never gave him orders to comply. [#84 at pp. 2-3.] Defendants' recollection of the incident differs from Plaintiff's in key respects. Defendants report that Plaintiff was in a scuffle with Officer Woods when Officer Van Cleave came around the corner; Plaintiff was flailing his legs and arms in what they perceived to be an attempt to resist arrest and flee; and all

4

force applied to Plaintiff occurred over a brief period and was the direct result of Defendants' multiple attempts to handcuff him using arrest control tactics known as "KOGA." [#84-2 at 61:8-18, 62:20-22, 63:18-22, 66:2-12, 67:7-23, 68:17-18.] Officer Van Cleave testified in his deposition that, other than keeping his leg on Plaintiff's lower back to keep him from kicking his legs, Defendants did not use force once Plaintiff was handcuffed. [#84-2 at 72:10-75:10.]

Defendants claim they gave numerous commands to Plaintiff to stop resisting arrest. [#81 at pp. 5-6.] Plaintiff testified in his deposition that he "never" received commands. [#84 at p. 4.] However, when asked in his deposition if "the officers never gave these orders, or [if he] simply [does not] recall hearing them give the orders[,]" Plaintiff testified, "I don't recall hearing them," and "If they gave me a command, I never heard it." [#84-1 at 130:11-14; 132:3-12.]

Defendants used the KOGA arrest system to secure Plaintiff. KOGA is an "arrest control tactics" system in which officers arrest individuals using physical force and "joint manipulation . . .maneuvers." [#84-2 at 21:21-22.] Officer Woods describes the technique as "us[ing] some leverage points" to secure Plaintiff's hand behind his back for handcuffing. [#81-2 at 49:9-15.] Officer Van Cleave taught the KOGA system as an adjunct instructor at the Aurora Police Academy. [#84-2 at 6:11-21, 16:1-25.]

## B. LEGAL STANDARD

Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the movant bears the "responsibility of informing the district court of the

basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* However, a mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). Instead, a nonmovant "must proffer facts such that a reasonable jury could find in her favor." *Id.*

Although Plaintiff currently proceeds in this matter *pro se*, counsel represented him during the briefing on summary judgment. [*See* #64 and #93.] Thus, the Court does not apply the liberal pleading standard applicable to *pro se* parties. *Cf. Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### C. ANALYSIS

Defendants assert their entitlement to qualified immunity as a basis for granting them summary judgment. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

When the qualified immunity defense is raised, the plaintiff bears the burden to show: (1) the defendant's alleged conduct violated a constitutional right; and (2) the right was clearly established at the time of the conduct "such that every reasonable officer would have understood, that such conduct constituted a violation of that right." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) (quotation omitted). If the plaintiff fails to satisfy either prong, a defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

The Tenth Circuit conducts a "changed circumstances" (or segmented) analysis when a complaint, like the one here, asserts multiple incidents of excessive force. *See Fancher v. Barrientos*, 723 F.3d 1191, 1999-1201 (10th Cir. 2013) (adopting a segmented – or "changed circumstances" – analysis in Fourth Amendment claims alleging multiple uses of excessive force). Here, Plaintiff alleges three incidents of excessive force; therefore, the Court's analysis must consider each incident separately. *Cf. Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010) ("[C]ircumstances may change within seconds of eliminating the justification for deadly force."), *accord Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("We therefore hold that force justified at the beginning

7

of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.").

In determining whether a defendant is entitled to qualified immunity, the facts are still viewed in the light most favorable to the nonmovant. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279, 1286–87 (10th Cir. 2008). However, the Court's focus is not on the usual summary-judgment paradigm of determining whether disputed issues of material fact raise a genuine issue for trial. *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015). "At the summary-judgment phase, a federal court's factual analysis relative to the qualified-immunity question is distinct . . .." *Id.*

> [T]he objective is not to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court.

*Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J., concurring).

Defendants' premise the Motion upon their version of events largely supported by their own affidavits. [#81 at 1-8.] But Plaintiff attests to a contrary version of events. Though the conflict suggests disputed issues of material fact for trial, the Court must determine whether Plaintiff's factual allegations are sufficiently grounded in the record "such that they may permissibly comprise the universe of facts" upon which the Court must decide the legal question of Defendants' entitlement to qualified immunity. *Id.*; *Cox*, 800 F.3d at 1243.

Because Plaintiff's version of events is based on his firsthand account as an active participant, it is sufficiently grounded in the record to the extent it is internally consistent.

8

As a result, the Court assumes the truth of Plaintiff's version of those events (again, to the extent the version is internally consistent) material to the Motion and for purposes of analyzing the three alleged instances of excessive force against Plaintiff, which include: (1) Officer Woods' takedown; (2) Officer Van Cleave's head-strike; and (3) a post-handcuff punch. The Court first considers whether the rights alleged were clearly established at the time of the incident.

**1.    The Fourth Amendment Rights Alleged Were Clearly Established**

"To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, that would have put an objective officer in [Defendants'] position on notice that he was violating [Plaintiff]'s Fourth Amendment rights." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019) (internal quotation marks omitted). "The Supreme Court has warned against defining a clearly established right 'at a high level of generality.' . . . Instead, 'the clearly established law must be "particularized"' to the facts of the case.'" *Estate of Ceballos*, 919 F.3d at 1214-15 (internal citations omitted). But in the context of a Fourth Amendment claim for excessive force, "there will almost never be a previously published opinion involving exactly the same circumstances." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). As a result, the pertinent inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey*, 509 F.3d at 1284 (internal citation omitted). "The more obviously egregious the conduct in light of prevailing constitutional

principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quotation omitted).

Defendants assert that, on September 25, 2014, there was no prior Supreme Court or Tenth Circuit excessive force case involving an officer using low-level force on a non-compliant, unrestrained suspect who refused to obey commands. [#81 at pp. 20-22.] There are two things wrong with this assertion. First, it fails to adhere to the Tenth Circuit's established practice, as applied in *Fancher v. Barrientos*, of assessing Fourth Amendment claims in the context of each discrete use of force alleged. *See* 723 F.3d 1191, 1999-1201 (10th Cir. 2013) (applying a "changed circumstances" analysis to evaluate discrete incidents of excessive force). Second, there is clearly established Tenth Circuit precedent putting Defendants on notice of the unlawfulness of their alleged conduct on September 25, 2014.

The Tenth Circuit has found that "it was clearly established in 2011" – three years before the incident at issue in this case – "that the Fourth Amendment prohibits the use of force without legitimate justification, <u>as when a subject poses no threat or has been subdued</u>." *McCowan v. Morales*, 945 F.3d 1276, 1287-89 (10th Cir.2019) (emphasis in original) (discussing *Dixon v. Richer*, 922 F.2d 1456, 1457-59, 1462-63 (10th Cir. 1991), *Casey*, 509 F.3d at 1279-83, and *Weigel v. Broad*, 544 F.3d 1143, 1146-49, 1151-53 (10th Cir. 2008)). Moreover, by at least August 2003, the Tenth Circuit had clearly established "that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Casey*, 509 F.3d at 1285. Thus, as a general matter, Plaintiff has adduced facts, based on his own deposition testimony, that indicate he was the subject

10

of force despite being compliant, subdued, and not attempting to flee or resist arrest. These facts alone are sufficiently grounded in the record and permissibly comprise the applicable universe of facts to conclude that Plaintiff's right to be free from the excessive use of force was clearly established as of the date of the incident. *McCowan*, 945 F.3d at 1287-89. However, in accordance with the Tenth Circuit's segmented-analysis approach to Fourth Amendment claims, the Court considers whether Plaintiff's right to be free from excessive use of force was clearly established as to each alleged incident. *See Fancher*, 723 F.3d at 1999-1201.

**Officer Woods' Takedown:** The facts sufficiently grounded in the record to permissibly comprise the applicable universe of facts concerning Officer Woods' initial takedown of Plaintiff are as follows: (1) Plaintiff was being arrested for a nonviolent misdemeanor; (2) he was neither resisting arrest nor fleeing; (3) he was compliant and in position for Officer Woods to begin handcuffing him; (4) he turned his head toward Officer Woods to ask a question while awaiting handcuffs; and (5) Officer Woods swept Plaintiff's legs and tackled him out of the home and onto the front porch. On these facts, Plaintiff posed no threat to Officer Woods and was effectively compliant and subdued. Thus, Officer Woods takedown would appear to be without legitimate justification, at least on these facts. And the Tenth Circuit precedent in *Dixon*, *Casey*, and *Weigel* put him on notice of Plaintiff's clearly established right to be free from the takedown under these circumstances.

Further, in 2007, the Tenth Circuit held that it was unreasonable for an officer to use force against a nonviolent, misdemeanor suspect who was not resisting arrest,

11

fleeing, or otherwise dangerous. *Casey*, 509 F.3d at 1279-83. Plaintiff's case shares similarities insofar as Plaintiff was also a suspect of a nonviolent misdemeanor who was not fleeing, resisting arrest, or otherwise dangerous at the time Defendants used force against him, at least on the current record before the Court on summary judgment. *See McCowan*, F.3d at 1286 (holding that "cases holding an officer was not entitled to qualified immunity on a lesser subset of . . . salient factors . . . should have advised [officers] of the illegality of his behavior"). Thus, Officer Woods was on notice of Plaintiff's clearly established right to be free from the initial takedown.

**Officer Van Cleave's Head-Strike:** This involves Officer Van Cleave's use of force that drove Plaintiff's head into the ground.[7] The facts sufficiently grounded in the record to permissibly comprise the applicable universe of facts are as follows: (1) Plaintiff verbalized his nonresistance to his arrest and submitted to Officer Woods when he saw Officer Van Cleave come around the house; (2) Plaintiff allowed Defendants to roll him on his stomach; (3) Plaintiff was unrestrained and had his hands and arms underneath his body; and (4) Officer Van Cleave grabbed Plaintiff's hand while striking the back of his head with his forearm – driving his head into the ground; and (5) Officer Van Cleave covered Plaintiff's nose and mouth with his hand.

In *Dixon v. Richer*, the Tenth Circuit held that the "continued and increased use of force against a subdued detainee" violates the Fourth Amendment. 922 F.2d 1456, 1463

---

[7] The Parties describe this alleged use of force differently. The head-strike referred to by the Court is the alleged use of force by Officer Van Cleave when removing Plaintiff's weightbearing hand from underneath him while simultaneously driving his head into the ground. [#84-1 at 113:2-117:21.]

12

(10th Cir. 1991). There, the Tenth Circuit found that an officers' use of force—kicking the plaintiff and hitting him in the stomach with a flashlight, and then choking and beating him—was unreasonable where officers did not suspect the detainee of committing a crime, the detainee had already been frisked, "had his hands up against the van with his back to the officers, and was not making any aggressive moves or threats." *Id. Dixon* shares several salient facts with the case at bar: the detainee was not resisting nor attempting to flee; he was not suspected of a dangerous or violent crime; and he posed no threat to the officers. Because *Dixon* was decided in 1991 – thirteen years before the incident at issue – the Court finds that Plaintiff's right to be free from a strike to the head while subdued and not resisting arrest was sufficiently established such that it put Officer Van Cleave on notice of the unlawfulness of his conduct.[8]

**Post-Arrest Punch:** Finally, the Court considers the post-arrest punch applied by one of the Defendants. The facts sufficiently grounded in the record to permissibly comprise the applicable universe of facts are as follows: (1) Plaintiff was lying prone and restrained; (2) he was not making aggressive movements; (3) he was yelling for help; and (4) one of the Defendants punched him in the face resulting in pain and bruising.[9] Again, *Dixon* shares sufficient salient facts with this post-arrest strike: the detainee was not resisting nor attempting to flee; he was not suspected of a dangerous or violent crime; he posed no threat to the officers; and yet the officers still hit him. Moreover, the *Dixon*

---

[8] Indeed, Officer Van Cleave, an adjunct police academy instructor specializing in arresting techniques, testified in his deposition that a strike to the head constitutes deadly force, and that it would be against policy to strike a suspect to gain compliance when their hands are underneath them, as Plaintiff's hands were. [#84-2 at 23:3-21, 31:7-11.]

[9] The number of punches thrown is unclear, as is the Defendant who threw them.

13

detainee was unrestrained and standing, and yet, the Tenth Circuit found the officer's striking and beating the detainee violated his Fourth Amendment rights. *See id.*; *see also Casey*, 509 F.3d at 1285 ("*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."). Thus, the unlawfulness of the post-arrest strike was also clearly established on September 25, 2014. *See Dixon*, 922 F.2d at 1463 ("Although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not."); *see also McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018) (holding that, in 2011, it was clearly established that "the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued.").

On the current record, the Court concludes that the constitutional right asserted by Plaintiff, *i.e.*, his Fourth Amendment right to be free from the excessive use of force, was clearly established on September 25, 2014. *See Hope v. Pelzer*, 536 U.S. 730, 739 (holding that courts need not find "the very action in question has previously been held unlawful, but . . . that in light of pre-existing law the unlawfulness must be apparent.").

**2.  Violation of the Constitutional Right**

Courts evaluate excessive force claims under an objective reasonableness standard judged from the perspective of a reasonable officer on the scene. *Perea*, 817 F.3d at 1202.

> To determine if an officer's actions were objectively reasonable, we carefully consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989)) (quotation omitted).

In *Maestas*, the Tenth Circuit held that "[a]lthough issues of qualified immunity normally are questions of law decided prior to trial, in exceptional circumstances historical facts may be so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right." *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003); *see also Walker v. Elbert*, 75 F.3d 592, 598 (10th Cir. 1996) (holding that qualified immunity issues may be sent to the jury under special circumstances). The Tenth Circuit went on to affirm the district court's decision to submit to the jury the "hotly contested" issue of whether a reasonable person in the defendant's position would have known that his conduct violated the plaintiff's clearly established right to be free from workplace sexual harassment where the parties "presented diametrically opposed versions of their relationship[.]" *Maestas*, 351 F.3d at 1009. Similarly, in *Fisher v. City of Memphis*, the court held that when "the legal question of qualified immunity turns upon which version of facts one accepts, the jury, not the judge, must determine liability." 234 F.3d 312, 317 (6th Cir. 2000) (internal quotation omitted) (question of whether police officer's use of deadly force was objectively reasonable was properly submitted to jury).

As in *Maestas* and *Fisher*, the qualified immunity analysis in this case hinges upon whose diametrically opposed version of the facts is to be believed on matters relating to whether: Plaintiff posed an immediate or ongoing threat of serious physical harm to the

Officers; he actively resisted arrest or ignored orders to comply; he was restrained or subdued at the time any force was applied against him; etc. This is true for each discrete alleged use of force. Because the historical facts surrounding each discrete use of force are so intertwined with the question of law on qualified immunity, a jury must resolve the factual disputes before the legal question may be determined.[10] *See Maestas*, 351 F.3d at 1007. For this reason, the Court DENIES the Motion.

**C. CONCLUSION**

Based on the above, IT IS ORDERED that Defendants' Motion for Summary Judgment [#81] is DENIED as to the Fourth Amendment excessive force claims and DENIED AS MOOT as to the false imprisonment claim Plaintiff abandoned. The question of whether Defendants are entitled to qualified immunity shall be determined at trial.

DATED: March 31, 2020.

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge

---

[10] This may be done at trial by presenting the jury with special interrogatories to resolve the factual disputes that bear on the issue of qualified immunity, for example.